S12Q2087. BULLARD v. MRA HOLDING, LLC et al.
(740 SE2d 622)

MELTON, Justice.

This case is before us based upon questions certified to this Court by the United States District Court for the Northern District of Georgia[1] regarding the availability and scope of an appropriation of likeness claim under Georgia law. Because we conclude that such a claim is available to the plaintiff under the facts presented here, and because we conclude that such a claim is controlled by Georgia law even where, as here, some of the activities that ultimately gave rise to the claim took place in Florida, we outline the parameters of the claim below.

The alleged facts of this case as reported by the District Court indicate the following: In the spring of 2000, fourteen-year-old Lindsay Bullard exposed her breasts to two unknown men in a parking lot in Panama City, Florida. Bullard was aware that the men were videotaping her at the time and expressed no objection to being videotaped. The two men and Bullard had no discussion about what future use the men might make of the videotape. MRA Holding LLC (hereinafter "MRA"), obtained the recording and included it in its *College Girls Gone Wild* video series. MRA also used a still photo of Bullard that was taken from the video clip and placed it in a prominent position on the cover of the video box for the *College Girls*

*Gone Wild* video that it later marketed and sold nationwide. On that image, MRA blocked out Bullard's breasts and superimposed an inscription, "Get Educated!" in that block. The inscription arguably gave the appearance that Bullard was making this statement. MRA did not obtain Bullard's permission to use the video footage of her in the *College Girls Gone Wild* video or to use her photo on the video box cover. Television and internet advertisements were aired that incorporated Bullard's image. Bullard's image had no commercial value before appearing on the cover of the *College Girls Gone Wild* video. Bullard suffered humiliation and injury to her feelings and reputation as a result of the aforementioned use of her image.

Bullard sued MRA in the United States District Court for the Northern District of Georgia for, among other things, appropriation of her likeness. MRA moved for summary judgment, and, in order for the District Court to decide the motion with respect to Bullard's claim for appropriation of likeness, it certified the following questions to this Court:

1. *Does Georgia law govern Bullard's appropriation of likeness claim when*:
A. Bullard, whose domicile is in Georgia, has been videotaped in Florida;
B. when her clip has been included in a video including images of other such girls, and her image has been placed prominently on the cover of the marketing materials, with a statement arguably attributed to Bullard that she did not make;
C. when that video, along with Bullard's image and statement on the cover of the video, has been advertised nationally, including in Georgia, and when the video has been marketed and sold nationwide, including in Georgia; and
D. when the emotional injury to Bullard, such as humiliation, ridicule, and other negative consequences, has occurred in Georgia?
E. If Georgia law does not control, which state's law does govern the dispute in this case?

2. *Assuming that Georgia law does control, do the facts stated above give rise to a cause of action under Georgia law for appropriation of Bullard's image?*
A. If so, and for purposes of instructing a jury, what are the elements of such a claim?

3. *If a reasonable jury could find for Bullard on the above facts on an appropriation claim, what type of damages may Bullard recover?*
A. If the answer to this question is "the advertising value of the use of the material in the manner and for the time it was appropriated," is Bullard required to show some preexisting "advertising value" for her image prior to being videotaped or, instead, does the "advertising value" test look to the value of the image of a model who is not known to the public when that image is used on video packaging materials and on television advertisements of a product?

4. *On the above facts, does Bullard's consent to being videotaped constitute consent to the videographer, or his assignees, to incorporate the clip into a video tape that is commercially distributed and to place a photo from that clip on the cover of the video packaging?*

5. *If, under Georgia law, the answer to Question #4 is "yes," can Bullard's consent be rendered invalid if Bullard was a minor?*
A. If Bullard's minor status can undo an otherwise valid consent, does this minor status automatically undo consent in all circumstances?
B. If not, what are the factors that the jury should consider in determining whether the consent of a minor is valid?

We address each question in turn.
1. *Does Georgia law govern Bullard's appropriation of likeness claim?*
Yes. As an initial matter, because Bullard filed her lawsuit in a Georgia District Court, the Georgia federal court is to apply Georgia's conflict of laws rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U. S. 487 (61 SC 1020, 85 LE 1477) (1941) ("The conflict of laws rules to be applied by the federal court in [the forum state] must conform to those prevailing in [that] state['s] courts."). In this connection, for over 100 years, the state of Georgia has followed the doctrine of lex loci delicti in tort cases, pursuant to which "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809 (621 SE2d 413) (2005). See also id. at 811 ("The doctrine of lex loci delicti has served the resolution of conflict of laws issues in tort actions in [Georgia] for nearly 100 years"). The place where the tort was committed, or, "the locus delicti, is the place where the injury sustained was suffered rather than the

place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Ridson Enterprises, Inc. v. Colemill Enterprises, Inc.*, 172 Ga. App. 902, 903 (1) (324 SE2d 738) (1984) (citation and punctuation omitted).

Applying the doctrine to this multi-state commercial appropriation of likeness claim, we conclude that the substantive law of Georgia governs MRA's potential liability. Although the initial video of Bullard was shot in Florida, MRA distributed Bullard's image throughout the United States, including in Georgia. Bullard lived and attended school in Georgia, where she would have sustained any injury that resulted from the distribution of her image. Since Georgia is the state "where the injury sustained was suffered," Georgia law controls here. See also *Martin Luther King, Jr., Center for Social Change, Inc. v. American Heritage Products, Inc.*, 250 Ga. 135 (296 SE2d 697) (1982) (where plaintiff was domiciled in Georgia, Court applied Georgia law to claims arising from defendant marketing and selling plastic busts bearing Dr. Martin Luther King's likeness across the country).[2]

2. *Do the facts stated above give rise to a cause of action under Georgia law for appropriation of Bullard's image, and, if so, what are the elements of such a claim?*

Yes. We find that, under the facts as found by the District Court, Bullard states a claim for appropriation of likeness under Georgia law. An appropriation of likeness claim in Georgia is but one of several different torts relating to the invasion of one's privacy. See *Martin Luther King, Jr.*, supra, 250 Ga. at 142 (1). See also *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68) (1905) (recognizing tort protecting right of privacy where plaintiff's photo was used in a newspaper to promote a life insurance product without his consent). More specifically,

> there are four disparate torts under [the] common name [of invasion of privacy]. These four torts may be described briefly as: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; [and] (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

---

[2] Further discussion of the potential viability of Bullard's appropriation claim under the facts presented here will be included in our response to question 2, infra.

(Citation and punctuation omitted.) *Martin Luther King, Jr.*, supra, 250 Ga. at 142 (1). With regard to an appropriation claim, "[u]nlike [a claim based on] intrusion, disclosure, or false light, appropriation [(also recognized with respect to a celebrity's 'right of publicity')] does not require the invasion of something secret, secluded or private pertaining to plaintiff, nor does it involve falsity." (Citation and punctuation omitted.) Id. Instead, the tort "consists of the appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness. . . . [Cit.]" Id. Because of this, "[t]he interest protected (in [an] 'appropriation' case[ ]) is not so much a mental as a proprietary one, in the exclusive use of the plaintiff's name and likeness as an aspect of his identity." Id.

With these principles in mind, this Court has held that an appropriation of likeness claim in Georgia consists of the following elements: "[1] the appropriation of another's name and likeness, whether such likeness be a photograph·or [other reproduction of the person's likeness], [2] without consent[, and] [3] for the financial gain of the appropriator." Id. at 143 (1). See also *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 191 (50 SE 68) (1905) (evaluating a "privacy" claim that was much like a modern day appropriation claim around the above elements); *Cabaniss v. Hipsley*, 114 Ga. App. 367, 377 (151 SE2d 496) (1966).

Furthermore, because this Court has previously stated that the interest protected in an appropriation case is in the plaintiff's exclusive use of his or her name and likeness as an inherent "aspect of his [or her] *identity*" (see *Martin Luther King, Jr.*, supra, 250 Ga. at 142 (1)), we do not find any requirement in Georgia law that the plaintiff must have any inherent or preexisting commercial value in his or her name before a wrongful appropriation takes place in order to maintain a viable claim for appropriation. Indeed, "the courts in Georgia have recognized the rights of *private citizens . . . as well as entertainers . . .* not to have their names and photographs used for the financial gain of the user without their consent." (Emphasis supplied.) Id. at 143 (1). While a private citizen may not have the same commercial value in his or her name and likeness that a celebrity may have, or any preexisting commercial value in his or her name and likeness at all for that matter, that would not foreclose that person from pursuing a cause of action against a wrongdoer who appropriated the person's name and likeness for their own commercial gain.

Here, Bullard is a private citizen whose image was arguably used without her consent to endorse an MRA product for MRA's own commercial gain. See generally *Pavesich*, supra, 122 Ga. 190 (recognizing cause of action in the vein of appropriation of likeness where plaintiff's image was used without his consent to make it appear as

though he was endorsing insurance product advertised in newspaper). Pretermitting the question whether Bullard, as a fourteen-year-old, could even legally consent to having her image used to endorse an MRA product for MRA's commercial gain (and we specifically decline to reach that issue here), the facts as found by the District Court show that it was not possible for Bullard to have given MRA consent to use her image to endorse the *College Girls Gone Wild* video involved here. The men to whom Bullard exposed her breasts never indicated to Bullard that they worked for, had any connection with, or had any intention of giving Bullard's image to MRA for the purpose of selling *College Girls Gone Wild* videos. Nor did Bullard have any contact with MRA to give MRA permission to use her image for that purpose. In short, any "consent" that Bullard may have given by exposing herself to the two individuals who videotaped her does not amount to consent for those individuals or an unidentified third party (MRA) to use her image to endorse a product for their own commercial gain. In this regard, as found by the District Court, MRA placed the words "Get Educated!" on the cover of the *College Girls Gone Wild* video in a manner that made it appear as though Bullard may have been making this statement. This could serve as an "endorsement" of the *College Girls Gone Wild* video by Bullard without her consent, as the viewer of the video cover is ostensibly being invited to "Get Educated!" about the contents of the video (and Bullard's exposed breasts) by purchasing the video at Bullard's request. Accordingly, Bullard states a claim for MRA's appropriation of her image without her consent and for its own commercial gain. See *Martin Luther King, Jr.*, supra, 250 Ga. at 138 (1) ("The publication of a picture of a person, without his consent, *as a part of an advertisement, for the purpose of exploiting the publisher's business*, is a violation of the right of privacy of the person whose picture is reproduced, and entitles him to recover.") (Citation and punctuation omitted; emphasis supplied.)

Because, under the facts of this case, Bullard can be seen as *endorsing* the *College Girls Gone Wild* video through the use of her image, we find no conflict between Bullard's "right of privacy and the freedoms of speech and press." *Martin Luther King, Jr.*, supra, 250 Ga. at 138 (1). Again, here, MRA's use of Bullard's image on the cover of the *College Girls Gone Wild* video with an inscription that arguably indicated that Bullard was encouraging others to "Get Educated!" by purchasing it would suggest that MRA was using the image "as a part of an advertisement, for the purpose of exploiting [MRA's] business." Id. Accordingly, MRA could be subject to liability for its actions. Id. See also *Pavesich*, supra.

3. *If a reasonable jury could find for Bullard on the above facts on an appropriation claim, what type of damages may Bullard recover?*

As stated previously, "[t]he interest protected (in [an] 'appropriation' case[ ]) is not so much a mental as a proprietary one, in the exclusive use of the plaintiff's name and likeness as an aspect of his identity." (Citations and punctuation omitted.) *Martin Luther King, Jr.*, supra, 250 Ga. at 142 (1). In this sense,

> [r]ecognizing, as we do, the fundamental distinction between causes of action involving injury to feelings, sensibilities or reputation and those involving an appropriation of rights in the nature of property rights for commercial exploitation, it must necessarily follow that there is a fundamental distinction between the two classes of cases in the measure of damages to be applied. In the former class (which we take to include the intrusion, disclosure, and false light aspects of the privacy tort), general damages are recoverable without proof of special damages. In the latter class, the measure of damages is the value of the use of the appropriated publicity.

(Citations and punctuation omitted.) Id.

Accordingly, because Bullard is pursuing an appropriation of likeness claim, her measure of damages would *not* include general damages. *Martin Luther King, Jr.*, supra, 250 Ga. at 142 (1). Rather, her damages would be measured by "the value of the use of the appropriated publicity." Id. In other words, any recovery would be limited to the actual damages Bullard incurred from MRA's appropriation of her image. Again, Bullard need not show that her likeness had inherent commercial value before MRA used it in order for her to collect damages. See id. at 142 (1) (In Georgia, because every person has the right to the exclusive use of his or her name and likeness as an inherent "aspect of his [or her] identity . . . the courts in Georgia have recognized the rights of private citizens . . . as well as entertainers . . . not to have their names and photographs used for the financial gain of [another] user without their consent"). Indeed, the fact that MRA chose to use Bullard's specific image would suggest that it believed that the image held some value with respect to advancing the company's goal of selling more *College Girls Gone Wild* videos. Regardless of MRA's choice to use Bullard's image, however, in order to collect damages, Bullard must nevertheless show that the use of her image actually added value to MRA's advertising efforts that otherwise would not have existed without the use of her image. While it may be difficult for Bullard to prove how much the use of her specific image versus other images on the cover of the video added

value to MRA's advertising efforts, assuming that she could show such added value from the use of her image, she would be entitled to recover damages.

4. *On the above facts, does Bullard's consent to being videotaped constitute consent to the videographer, or his assignees, to incorporate the clip into a videotape that is commercially distributed and to place a photo from that clip on the cover of the video packaging?*

No. In light of our answer to question 2, supra, the answer to this question is that such consent would not be the equivalent of consenting to have one's image placed on the cover of the packaging of a commercially distributed videotape as an endorsement of the product being sold.

5. *If, under Georgia law, the answer to Question #4 is "yes," can Bullard's consent be rendered invalid because Bullard was a minor?*

As indicated in our discussion regarding question 2, under the facts as presented by the District Court, it was not possible for Bullard to have given MRA consent to use her image to endorse the *College Girls Gone Wild* video in which her image appeared. Therefore, we need not reach the additional question whether Bullard's consent could have been rendered invalid due to her age.

*Certified questions answered. All the Justices concur.*

DECIDED MARCH 28, 2013.

*Banks & Riedel, Jeffrey S. Banks, Sarah E. Hinkle Riedel,* for appellant.

*Wargo French, Joseph S. Carr, Nicole D. Waller,* for appellees.