**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0586. SHIHO SEKI v. GROUPON, INC.

McMILLIAN, Judge.

Shiho Seki d/b/a Magical Adventures Balloon Rides ("Magical Adventures")[1] appeals from the trial court's grant of summary judgment on her claims for breach of contract, tortious interference with contractual relations,[2] and invasion of privacy through misappropriation against Groupon, Inc. For the reasons that follow, we affirm

---

[1] It appears as though Seki's official trade name is "Magical Adventure Balloon Rides." Because the notice of appeal listed the trade name as "Magical Adventures Balloon Rides," however, the case was docketed as such and we will continue to use the docketed name for the purposes of this opinion.

[2] In its complaint, Magical Adventures couched this claim as one for tortious interference with business relations, but argued both in its brief and at the summary judgment hearing as a claim for tortious interference with contractual relations. The trial court analyzed it under both torts and, for the purposes of appeal, Magical Adventures contends that the contractual relations claim should have survived.

the trial court's order as to the breach of contract and tortious interference with contractual relations claims, but reverse the grant of summary judgment on the claim of invasion of privacy through misappropriation.

> Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party.

(Citation omitted.) *LeCroy v. Bragg*, 319 Ga. App. 884, 885 (1) (739 SE2d 1) (2013).

So viewed, the pertinent facts are as follows. Seki is a sole proprietor operating a hot air balloon ride business in the Temecula Valley region of California under the registered trade name, "Magical Adventures Balloon Rides." Groupon, Inc. is an online marketplace engaged in offering daily promotions whereby customers purchase discount price vouchers redeemable by Groupon's vendors. Magical Adventures and other providers of hot air balloon rides in the Temecula Valley entered into an oral agreement that they would not advertise with Groupon or similar online marketers. In addition, the written bylaws of the Temecula Valley Balloon Association prohibits its members, which includes Magical Adventures, from contracting with Groupon without preapproval.

2

In September 2012, Groupon had a business relationship with Sportations, a Georgia business that agreed to provide Groupon's customers with hot air balloon rides for the designated price of $139 per voucher. Groupon marketed and sold 25 vouchers for hot air balloon rides through its internet campaign with Sportations. Several months later, however, Groupon ended its business relationship with Sportations. At that time, 18 of the 25 purchased Sportations vouchers had not yet been redeemed.

Groupon, which had made numerous unsuccessful vendor solicitations to Magical Adventures, requested that it honor the unredeemed Sportations vouchers in exchange for the payment of $150 per voucher. Magical Adventures agreed to do so and signed a "Declaration," the substance of which, although not technically accurate, provided that:

> I, [Shiho Seki, authorized representative of Magical Adventures,] contracted with Sportations to provide these services to customers who purchased Groupon vouchers at the price of $150.00. . . . I agree to provide the same services, at the same price, to customers who present me with Groupon vouchers.

Groupon informed Magical Adventures that "[t]o facilitate the process [of the provider change], we will notify our customers to contact you directly and follow any

specific instructions and systems you have for scheduling your services. Please provide us your reservation contact information (phone, email, website, etc.) when you reply to this email." Magical Adventures informed Groupon that it "prefer[red] that the customers call [it] directly" and provided a phone number.

Groupon subsequently sent e-mails to the 18 individuals holding the outstanding Sportations vouchers notifying them that their "reservations will now have to be made directly through Magical Adventure Balloon Rides" and providing them with Magical Adventures's telephone number and website. Additionally, Groupon updated the Sportations "deal page" on its website to substitute Magical Adventures's trade name and telephone number for that of Sportations's.[3]

Sometime thereafter, Groupon contacted the operator of D&D Ballooning, one of Magical Adventures's competitors, and informed him that Magical Adventures had been advertising in a Groupon campaign. Based upon this conversation and Groupon's website containing Magical Adventures's name and likeness, the operator of D&D assumed that Magical Adventures had breached their oral agreement and, despite having previously declined Groupon's offers to advertise (citing the standing

---

[3] No new vouchers were offered for sale or purchased.

agreement between the providers), he agreed to contract with Groupon "in order to maintain competition."

Magical Adventures contacted Groupon and asserted that its act of publishing Magical Adventures's name, brand, and likeness on its website and printable vouchers was unauthorized and demanded that they be removed. Magical Adventures alleges that Groupon refused to remove the publication and, as a direct result, an internet search for "Magical Adventures Balloon Rides" resulted in a higher position for Groupon's website than for its own.

Magical Adventures further alleges that, during this same time period, its revenues decreased by $139,817.02, and that the revenues rebounded after its name was eventually removed from Groupon's website. It submitted the affidavits of two potential customers who asserted that they specifically researched Magical Adventures's online reviews and, based on the positive feedback, sought to purchase a balloon ride from Magical Adventures. During the searches, they discovered what they believed to be a Groupon campaign advertising Magical Adventures balloon rides. After going to Groupon's website, however, they learned that the Magical Adventure's campaign had expired, and that Groupon offered balloon rides from

5

other vendors for a lesser price. Both customers ultimately purchased balloon rides through Groupon.

Magical Adventures thereafter filed suit against the company alleging breach of contract, tortious interference with business/contractual relations, and invasion of privacy through misappropriation, among other claims. Groupon successfully moved for summary judgment, and this appeal followed.

1. Magical Adventures contends that the trial court erred in granting summary judgment to Groupon on its claim for breach of contract. In the complaint, Magical Adventures alleged that it had entered into an enforceable contract with Groupon pursuant to which Groupon agreed to pay it $150 for each Sportations voucher honored and that Groupon failed to tender payment pursuant to that agreement.

The record belies Magical Adventures's claim. At the time of the proceedings, 15 of the 18 outstanding customer vouchers had been redeemed and honored by Magical Adventures. As admitted by Magical Adventures, Groupon tendered payment for the seven redeemed vouchers for which Magical Adventures submitted a written request, and Magical Adventures did not request payment for the remaining eight. Nevertheless, it is undisputed that Groupon repeatedly attempted to pay

6

Magical Adventures for the remaining eight vouchers and Magical Adventures refused tender.

Under Georgia law, "[t]he elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken." (Citation and punctuation omitted.) *Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279 (1) (469 SE2d 712) (1996). Accord *UWork.com, Inc. v. Paragon Technologies, Inc*., 321 Ga. App. 584, 590 (1) (740 SE2d 887) (2013). "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *UWork.com, Inc*., 321 Ga. App. at 590 (1). And "[a] tender properly made is the equivalent of performance." *Anderson v. Barron*, 208 Ga. 785, 793 (2) (69 SE2d 874) (1952); see *B-X Corp. v. Jeter*, 210 Ga. 250, 255 (2) (78 SE2d 790) (1953) ("Tender, when made or waived, satisfies the requirement for payment.").

Contrary to Magical Adventures's allegation that Groupon failed to pay it the monies owed for the Sportations vouchers that it had honored, the undisputed record establishes that Groupon paid or attempted to pay for each of the redeemed vouchers.

7

It follows that Magical Adventures has failed to establish a breach of the contract, and the trial court did not err in granting summary judgment to Groupon on this claim.

2. Magical Adventures further argues that the trial court erred in granting summary judgment to Groupon on its claim for tortious interference with contractual relations. The premise of this claim is Magical Adventures's assertion that Groupon's use of its name and likeness on Groupon's website induced D&D to breach their oral contract to refrain from engaging in Groupon advertising and, further, induced Magical Adventures's breach of the Temecula Valley Balloon Association bylaws prohibiting the same without prior approval.

> To succeed on a tortious interference with contractual relations claim,
>
> a plaintiff must show that a defendant: (1) acted improperly or wrongfully and without privilege; (2) acted purposely, with malice, and with the intent to injure; (3) induced a third party to breach a contract with the plaintiff; and (4) caused plaintiff financial injury.

*Medlin v. Morganstern*, 268 Ga. App. 116, 119 (a) (601 SE2d 359) (2004).

(a) Although we see several potential problems with Magical Adventures and D&D's agreement to refrain from contracting with Groupon,[4] we need go no further

---

[4] Not the least of which is that any such oral agreement is unenforceable under the statute of frauds. See OCGA § 13-5-30 (5) ("To make [an agreement that is not

8

than recognizing that Magical Adventures has failed to come forward with evidence sufficient to establish a causal connection between its alleged decrease in revenue and D&D's alleged breach so as to establish damages. Since evidence of damages is an essential element of a claim for tortious interference with contractual relations, the trial court correctly determined that Groupon is entitled to summary judgment. See OCGA § 9-11-56 (c); *Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 832 (1) (662 SE2d 880) (2008) ("[I]f a plaintiff cannot show that damage to his rights or obligations under a contract proximately resulted from the third party's alleged interference, his claim for tortious interference fails as a matter of law.") (citation and punctuation omitted); see also *Carter v. Willowrun Condominium Assn., Inc.*, 179 Ga. App. 257, 259 (4) (345 SE2d 924) (1986).

(b) Magical Adventures's claim that Groupon's use of its name and likeness induced it to breach the Temecula Valley Balloon Association's bylaws forbidding Groupon advertising without preapproval also fails as a matter of law. Pretermitting

---

to be performed within one year from the making] binding on the promisor, the promise must be in writing and signed by the party to be charged therewith . . . ."); *Moore v. BellSouth Mobility, Inc.*, 243 Ga. App. 674, 677 (2) (534 SE2d 133) (2000) ("There can be no breach of an unenforceable contract."); *Morgan v. Am. Ins. Managers, Inc.*, 239 Ga. App. 635, 637 (1) (521 SE2d 676) (1999) (holding that an oral employment contract that could, at its minimum duration, be performed in one year and one day was subject to the statute of frauds).

whether a claim for tortious interference may be predicated upon a breach of bylaws in this context, Magical Adventures's claim fails because the breach it alleges is its own. Cf. *Atlanta Market Center Management Co. v. McLane*, 269 Ga. 604, 609 (2) (503 SE2d 278) (1998) (one cannot tortiously interfere with one's own contracts). Moreover, Magical Adventures has admitted that the Association took no action with respect to the breach and, thus, its failure to show damages is also fatal to its claim. See OCGA § 9-11-56 (c); *Duke Galish, LLC*, 291 Ga. App. at 832 (1); *Carter*, 179 Ga. App. at 259 (4).

3. Finally, Magical Adventures argues that the trial court erred in granting summary judgment to Groupon on its claim for invasion of privacy through misappropriation. Noting that the common law right to privacy has never been extended to protect the name and likeness of a trade name, as opposed to the individual using the trade name, the trial court held that Magical Adventures's claim failed as a matter of law because no allegations had been made pertaining to a misappropriation of the identity of Shiho Seki, Magical Adventures's individual proprietor.

Georgia law is well established that "[t]he appropriation of another's name and likeness . . . without consent and for the financial gain of the appropriator is a tort."

10

*Martin Luther King, Jr., Center for Social Change, Inc. v. Am. Heritage Products, Inc.*, 250 Ga. 135, 143 (1) (296 SE2d 697) (1982); see *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 752 (2) (740 SE2d 622) (2013). Sometimes referred to as a right to publicity, misappropriation of someone's name or likeness constitutes one of four recognized forms of invasion of privacy, the others being "(1) [i]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing facts about the plaintiff; [and] (3) publicity which places the plaintiff in a false light in the public eye." (Punctuation and footnote omitted.) *Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 704-05 (1) (409 SE2d 835) (1991). But while the latter three seek to prevent injury to feelings, sensibilities, or reputation, "[t]he interest protected in the appropriation cases is not so much a mental as a proprietary one, in the exclusive use of the plaintiff's name and likeness as an aspect of his identity." (Citation and punctuation omitted.) *Martin Luther King, Jr.,* 250 Ga. at 142 (1); see *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 573 (97 SCt 2849, 53 LE2d 965) (1977) (contrasting the "important" differences between the tort of misappropriation with other claims for invasions of privacy); *Bullard*, 292 Ga. at 752 (2) ("[U]nlike a claim based on intrusion, disclosure, or false light, appropriation . . . does not require the invasion of something secret, secluded or

11

private pertaining to plaintiff, nor does it involve falsity. Instead, the tort consists of the appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness.") (citations and punctuation omitted). The rationale behind the tort "is the straight-forward one of preventing unjust enrichment by the theft of good will." (Citation and punctuation omitted.) *Martin Luther King, Jr.,* 250 Ga. at 141 (1). "No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay." (Citation and punctuation omitted.) Id.

Equally established under Georgia law is the axiom that "[a]n unincorporated proprietorship is not a legal entity separate from the proprietor, and the use of a trade name for the business does not create a separate legal entity." (Citations omitted.) *Brand v. Southern Employment Svc.*, 247 Ga. App. 638, 639 (545 SE2d 67) (2001); see *England v. Simmons*, 295 Ga. 1, 1 (757 SE2d 111) (2014); *Dowis v. Watson*, 161 Ga. App. 749, 750 (2) (289 SE2d 558) (1982). Indeed, "[a] trade name . . . is merely a name assumed or used by a person recognized as a legal entity" and "is nothing more than the alter ego of the individual." (Citations and punctuation omitted.) *Miller v. Harco Nat. Ins. Co.*, 274 Ga. 387, 391 (3) (552 SE2d 848) (2001).

The determination whether Magical Adventures's claim survives lies in the interplay between these independent bodies of law. Recognizing that a trade name is nothing more than an extension of the person using it, and that the rationale underpinning the tort of misappropriation is to protect the proprietary interest one has in the exclusive use of his or her name and likeness, we see no logical reason why that interest should be treated differently depending on whether it originates from the name and likeness of the individual proprietor or his or her trade name. Presumably both derive their value from the goodwill of that individual, who should be entitled to prevent others from unjustly profiting from the same. Cf. *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F2d 831, 835 (II) (6th Cir. 1983) (holding that, even though neither his name nor picture were used, Johnny Carson's common law right to publicity was invaded through defendant's use of the phrase "Here's Johnny" for advertising purposes); *Bell v. Foster*, No. 1:13-CV-405-TWT, 2013 WL 6229174, at *7 (N.D. Ga. Dec. 2, 2013) (holding that the heirs of a radio personality could sue for the misappropriation of his alias, "Jack the Rapper"); *Bi-Rite Enterprises, Inc. v. Button Master*, 555 FSupp. 1188, 1199 (IV) (S.D.N.Y. 1983) (interpreting the invasion of privacy by misappropriation laws of Georgia, California, Illinois, and New York to protect the name and likeness of a musical group because "[a] group

13

that develops market value in its persona should be as entitled as an individual to publicity rights in its name"); *Ackerman v. Ferry*, No. B143751, 2002 WL 31506931, at \*19 (Cal. Ct. App. Nov. 12, 2002) (holding that the misappropriation of a pen name was actionable "so long as the pseudonym has become widely known to the public as closely identified with the plaintiff"). Compare *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 FSupp. 856, 862 (III) (E.D. Pa. 1985) (declining to extend the common law claim for misappropriation to a corporate trademark based upon defendant's alleged use of a confusingly similar mark); *Jaggard v. R.H. Macy & Co.*, 176 Misc. 88, 89 (26 N.Y.S.2d 829) (Sup. Ct. 1941) (holding that "[a] name assumed for business purposes only, the exclusive use of which has been granted to a corporation," was not within the protection of New York's right to privacy law prohibiting the use of another's name for the purpose of trade without consent).

We note that this opinion is limited to the holding that Seki is not precluded from pursuing a claim for invasion of privacy through misappropriation based solely on the fact that the subject of the alleged appropriation was a trade name. Seki must still prove that Groupon appropriated Magical Adventures's name or likeness, without consent, and for Groupon's financial gain. See *Bullard*, 292 Ga. at 752 (2). But construing, as we must, the current record and all facts and inferences to be

14

drawn from it in the light most favorable to Magical Adventures, genuine issues of material fact remain such that the trial court erred in granting Groupon summary judgment on this claim.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Ray, J., concur.*