**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 10, 2016**

# In the Court of Appeals of Georgia

A16A0860. PIPKIN v. AZALEALAND NURSING HOME, INC.

BOGGS, Judge.

Mary D. Pipkin filed a slip and fall action against Azalealand Nursing Home, Inc., claiming its negligence caused her fall and resulting injury. The trial court was presented with Azalealand's motion to withdraw admissions pursuant to OCGA § 9-11-36 (b), Pipkin's motion for partial summary judgment as to liability based on those admissions, and Azalealand's motion for summary judgment. The trial court declined to rule on the first two motions,[1] and granted summary judgment to Azalealand on the basis that (1) Pipkin failed to prove the existence of a hazard or that the hazard caused

---

[1]The trial court noted, "If the Court were required to rule on the motion to withdraw the deemed admissions, the Court would exercise its discretion and grant the motion," but it considered the admissions as true in granting summary judgment. We have not considered them in reviewing the trial court's decision.

her fall; and that (2) Pipkin failed to prove actual or constructive knowledge on the part of Azalealand of any hazard. From this order, Pipkin appeals. Because we find that issues of fact remain regarding the existence of a hazard that caused the fall, we reverse.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation and punctuation omitted.) *Seki v. Groupon, Inc*., 333 Ga. App. 319 (775 SE2d 776) (2015). So viewed, the evidence showed that the then 88-year-old Pipkin accompanied her husband when he was transferred via ambulance to Azalealand's facility in the late afternoon of May 31, 2012. As the EMTs wheeled her husband down the hallway, Pipkin attempted to "keep up with the stretcher." Three employees of Azalealand were present at the time; two of them testified that Pipkin was walking with the aid of a cane, "walking fast," "leaning forward," or "rushing" as she came down the hallway. One of the employees testified that she offered to get a wheelchair, but that Pipkin did not respond and continued walking. When Pipkin reached the area of the hallway just past the shower room, she fell. One of the employees observed her

fall and screamed, "She's falling!" Pipkin testified that she was knocked unconscious by the fall and did not recall anything until the EMTs were attending to her some time later. She did not know what caused her to fall, other than that she "stepped on something slick." Pipkin testified to serious injuries caused by the fall, including a broken hip and broken shoulder, requiring lengthy hospitalization.

Pipkin's son testified by affidavit that he was in the parking lot outside the facility with his wife and sister when an employee called him and told him that his mother had fallen. They "rushed" inside and found his mother still lying on the floor. When he knelt down next to her, he felt that his knees were wet, and realized that she was lying in some clear liquid, which an Azalealand employee was mopping up with a towel.

All four employees of Azalealand who gave their depositions testified that the floor was clean and dry and that "nothing was on the floor." However, several employees also testified that it was "typical" or common for the floor outside the shower room to be wet, because most residents were wheeled to and from the shower room on stretchers or "shower beds" which became wet during the showering process. Warning cones were stored in the hallway because of the water falling from the shower beds and because the dining room on the opposite side of the hall was

3

mopped down after meals, but the cones were not in use at the time of Pipkin's fall. Although the employees asserted that no showers had been given to the residents that day, some testimony was elicited suggesting that the time at which showers were given was not uniform or completely regular.

OCGA § 51-3-1 provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

> Premises liability lies at the intersection of tort law and property law. To recover on a theory of premises liability, a plaintiff must show injury caused by a hazard on an owner or occupier of land's premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public. When a premises liability cause of action is based on a "trip and fall" or "slip and fall" claim — and the lion's share of premises liability cases are — we have refined this general test down to two specific elements. The plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control.

4

(Citations and footnotes omitted.) *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009). And

> it is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

(Citation and punctuation omitted.) *The Kroger Co. v. Schoenhoff*, 324 Ga. App. 619, 622-623 (751 SE2d 438) (2013).

1. We first consider the trial court's ruling that Pipkin failed to show the existence of a hazard on Azalealand's premises or that it caused her injury. Construing all the evidence and any inferences in favor of the nonmovant, Pipkin has presented evidence sufficient to require jury resolution of these issues.

*Smith v. Tenet HealthSystem Spalding*, 327 Ga. App. 878 (761 SE2d 409) (2014), presented a similar fact situation. There, Smith slipped and fell in a hospital hallway shortly after a janitor finished "wiping down" a maintenance cart. Id. at 878 (1). Smith did not see any liquid on the floor, but testified that she was in no condition to examine the area due to her pain and loss of consciousness. Id. at 879-

5

880 (1). We held that her "inability to personally testify as to what caused her to fall is not fatal to her case because there is other evidence permitting an inference as to the cause of her fall." Id. at 880 (1). Testimony from others regarding the earlier presence of the cart and a mop bucket, as well as the testimony of Smith's daughter-in-law that she noticed "something" on the floor that caused her foot to slip when she went to Smith's aid, the summoning of maintenance staff to "come get the spill up," and Smith's testimony that a nurse called for paper towels to mop up "something wet on the floor," was sufficient to create an inference of a foreign substance on the floor. Id.

Similarly, the testimony of Pipkin's son that he discovered liquid on the floor next to where his mother was still lying, and observed an employee mopping it up, is sufficient to create a jury issue. This is true even though the substance was never positively identified and even though Azalealand's employees denied the presence of any liquid on the floor. See *Hutchins v. J. H. Harvey Co.*, 240 Ga. App. 582 (1) (524 SE2d 289) (1999) (although store manager testified nothing was on floor where plaintiff fell, plaintiff's testimony about clear puddle of liquid on floor sufficient to create issue of fact as to presence of foreign substance on floor.)

Azalealand argues that the fact that there was some unknown quantity of water on the floor does not constitute evidence that it was present in a sufficient amount to constitute a hazard. But that is not what must be shown in order for a slip-and-fall plaintiff to withstand summary judgment. In *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466 (522 SE2d 749) (1999), the plaintiff presented evidence of two scuppernongs or muscadine grapes discovered near the area of her fall. Id. at 467 (1). We held that she had shown *some* evidence of a foreign substance

> that could have created the slippery condition she alleged. We are required on a motion for summary judgment to view the facts and inferences in a light most favorable to Reddick. Although Reddick could not positively state that the scuppernongs caused her to fall, reasonable jurors could make such an inference based on the proximity of the fruit to Reddick after the fall, the alleged "slippery" condition of the floor, and the assistant manager's statement after Reddick's fall that he saw scuppernong skins, rather than whole fruit.

(Citation omitted.) Id. at 469 (1) (a). Here, a jury could infer that the liquid on the floor caused Pipkin's fall from the testimony that the floor was slippery, that there was liquid on the floor "next to" Pipkin and in "the area around" her, and that an employee was mopping it up with a towel.

7

Azalealand also argues that Pipkin's son could not testify to the condition of the floor at the time of Pipkin's fall because the director of nursing testified that the family did not arrive for "I would say, about 15 minutes." But this witness also testified, in answering an unrelated question, that fifteen minutes seems the same as five to her when she is busy. In addition, another witness testified that "it all happened . . . very fast," so quickly that Pipkin's daughter "came right on down" and the family called 911 before the employees could. Moreover, nothing suggests another source for the water that Pipkin's son testified that he observed on the floor and being mopped up by an Azalealand employee within minutes after her fall. A jury could conclude from the evidence presented that the liquid on the floor caused Pipkin to fall, and the grant of summary judgment on this question therefore must be reversed.

2. We next address the trial court's ruling on the issue of constructive knowledge. We agree with Pipkin that the trial court had no authority to decide this issue. Azalealand did not assert lack of knowledge in its answer, and moved for summary judgment only on the basis of the absence of proof of a hazardous foreign substance that caused Pipkin's fall. The issue of constructive knowledge of the hazard on the part of Azalealand was never raised below. In its order, the trial court

acknowledged the paucity of evidence on the issue of constructive knowledge and inspection, but nevertheless ruled in Azalealand's favor on this basis. This was error.[2]

> While a trial court may grant a motion for summary judgment *sua sponte*, its
>
> authority to do so is not unlimited. The grant of summary judgment must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment.

(Citations and punctuation omitted.) *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995).

> Nothing . . . places a burden on a plaintiff to respond to issues which are not raised in the motion for summary judgment or to present [her] entire case on all allegations in the complaint – even on issues not raised in the defendant['s] motion. Indeed, until [Azalealand] pierced the allegations of [Pipkin's] complaint on a particular issue, [she] was neither required to respond to the motion on that issue, nor required to produce evidence in support of [her] complaint on that issue.

---

[2]We note that Azalealand's brief on appeal does not address the issue of constructive knowledge, nor does it respond to Pipkin's claim of procedural impropriety.

(Citations and punctuation omitted.) Id. at 690 (1). Here, Pipkin was never notified that the trial court intended to rule upon the issue of constructive knowledge, and that issue was not raised below. She did not have fair notice or opportunity to respond to the contentions on which the trial court granted summary judgment, and the trial court's order therefore must be reversed on this basis as well.[3]

*Judgment reversed. Barnes, P. J., and Rickman, J., concur*.

---

[3]In so holding, we expressly state no opinion as to whether the evidence was sufficient to raise a jury question on this issue.