**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 29, 2026

# In the Court of Appeals of Georgia

A26A0847. ACCURACY IN MEDIA, INC. et al. v. GIUSTI et al.

RICKMAN, Presiding Judge.

Isabella Giusti ("Izzy"), Joni Saxon-Giusti, and Peter Giusti (collectively, "the Giustis") filed a lawsuit against Accuracy in Media, Inc., and its president Adam Guillette (collectively, "Accuracy in Media") asserting claims for defamation, intentional infliction of emotional distress, false advertising, false light invasion of privacy, infringement of right of publicity, and cybersquatting, and seeking declaratory and injunctive relief and damages. Accuracy in Media filed a motion to strike the complaint pursuant to Georgia's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, OCGA § 9-11-11.1, which the trial court denied. Accuracy in Media appeals, arguing that the trial court erred by denying their motion. For the

following reasons, we affirm the trial court's denial of the motion to strike in part, reverse in part, vacate in part, and remand to the trial court for further proceedings consistent with this opinion.

"SLAPPs are meritless lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation." *American Civil Liberties Union v. Zeh*, 312 Ga. 647, 648 n.1 (864 SE2d 422) (2021) (punctuation omitted). "Georgia's anti-SLAPP statute is designed to curtail SLAPPs by giving persons and entities who believe they have been subjected to a SLAPP an avenue for ending the suit quickly, summarily, and at minimal expense." Id. (punctuation omitted). "[W]e construe the statute broadly in furtherance of the General Assembly's declared purpose to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech." *Giraldi v. Bowen*, 374 Ga. App. 347, 348 (912 SE2d 724) (2025) (punctuation omitted). "This Court reviews a trial court's ruling on an anti-SLAPP motion to strike de novo, viewing the pleadings

and affidavits submitted by the parties in the light most favorable to the plaintiff (as the non-moving party)." *Id.* (punctuation omitted).

So viewed, the record shows that Izzy, a native of Savannah, was a junior at Barnard College during the 2023-24 school year. Joni Saxon-Giusti and Peter Giusti are Izzy's parents. On April 18, 2024, Izzy joined a protest regarding the war in Gaza on Columbia University's main quad. During this protest, Izzy was arrested as part of a mass arrest of approximately 100 students. After Izzy was arrested, the *New York Post* ran an article identifying Izzy as one of the protesters who had been arrested.

On April 21, 2024, a masked person holding a sign that read "AL-QASAM'S NEXT TARGETS" was photographed in front of multiple pro-Israel counter-protestors near Columbia's main quad. According to the Giustis' verified complaint, the Al-Qassam Brigades are the military wing of Hamas, and, under the circumstances, the sign was rightly understood by those who saw it to be offensive and unacceptable and to imply that the counter-protestors should or would be subject to violence. Izzy was not the masked person in the photograph holding the sign and was not at the protest when the photograph was taken. Nevertheless, several organizations

3

opposed to the student protest at Columbia falsely claimed that Izzy was the person holding the sign.

By April 22, 2024, Accuracy in Media knew that "there[ were] questions as to if the picture [was] actually" Izzy. On May 1, 2024, Accuracy in Media purchased a website, www.izzygiusti.com. The website incorrectly identified Izzy as the person holding the sign in the photograph. On May 3, 2024, Guillette traveled to Savannah with a mobile billboard truck displaying Izzy's name and photograph and the web address "IzzyGiusti.com." According to Guillette, the purpose of his trip to Savannah was to interview Izzy's parents and conduct sidewalk interviews regarding Izzy. According to the Giustis, the purpose of the trip was to harass Izzy's family in the family's hometown. The mobile billboard truck and Guillette went near Joni Saxon-Giusti's bookstore and targeted Peter Giusti at the family home, "mocking political signs in the home's window, mocked Izzy's family for avoiding an interview, and wondering in a subsequent write-up how the family was responsible for raising a 'raging antisemite[.]'" Accuracy in Media subsequently revised the website, cropping the photograph of the person holding the sign so that the text of the sign was no longer

visible, and displaying the photograph next to a photograph of Izzy, with both photographs under the heading "Columbia's Leading Antisemite Isabella Giusti."

The Giustis filed their lawsuit against Accuracy in Media in February 2025. Accuracy in Media filed a motion to strike under OCGA § 9-11-11.1. Following a hearing, the trial court denied Accuracy in Media's anti-SLAPP motion to strike, and this appeal followed.

> [T]he analysis of an anti-SLAPP motion to strike involves two steps. First, the court must decide whether the party filing the anti-SLAPP motion ... has made a threshold showing that the challenged claim is one arising from protected activity. If so, the court must decide whether the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

*Zeh*, 312 Ga. at 650(1)(a) (citation modified); see OCGA § 9-11-11.1(b).[1] "Only a claim that satisfies *both* prongs of the anti-SLAPP statute — i.e., that arises from protected activity *and* lacks even minimal merit — is a SLAPP that is subject to being stricken."

------

[1] Pursuant to OCGA § 9-11-11.1(b):

(1) A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

(2) In making the determination as provided for in paragraph (1) of this subsection, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based; provided, however, that if there exists a claim that the nonmoving party is a public figure plaintiff, then the nonmoving party shall be entitled to discovery on the sole issue of actual malice whenever actual malice is relevant to the court's determination under paragraph (1) of this subsection.

*Wilkes & McHugh v. LTC Consulting*, 306 Ga. 252, 262-63(2)(b) (830 SE2d 119) (2019) (punctuation omitted). The trial court did not rule on whether Accuracy in Media had failed to meet the first prong of the anti-SLAPP statute; rather, it found that Accuracy in Media could not satisfy the second prong for each claim.

1. Accuracy in Media argues that the trial court erred by concluding that the Giustis are likely to prevail on their claims of defamation. To avoid a complaint being stricken by an anti-SLAPP motion, "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilkes & McHugh*, 306 Ga. at 262(2)(b) (punctuation omitted). In our analysis, "[t]he plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law." Id. (punctuation omitted).

In order for the Giustis to state a sufficient defamation claim, they must show "four elements: (1) a false and defamatory statement concerning the plaintiff[s]; (2) an unprivileged communication to a third party; (3) fault by the defendant[s] amounting to at least negligence; and (4) special harm or the actionability of the

statement irrespective of special harm." *Oskouei v. Matthews*, 321 Ga. 1, 8(2)(b) (912 SE2d 651) (2025). "A plaintiff's status as either a private figure or a public figure determines the proper standard of liability for the element of fault." *Gettner v. Fitzgerald*, 297 Ga. App. 258, 262(1)(c)(i) (677 SE2d 149) (2009). "To recover in a suit for defamation, a plaintiff who is a private person must prove that the defendant acted with ordinary negligence." Id. "A plaintiff who is a public figure, on the other hand, must meet a more stringent standard of liability; a public figure must prove by clear and convincing evidence that the defendant acted with actual malice." Id.

(a) Accuracy in Media contends that by voluntarily entering a public controversy, the Giustis assumed limited purpose public figure status. We disagree.

"Public figures are classified as either 'general purpose,' meaning for all purposes, or 'limited purpose,' meaning for a limited range of issues." *Infinite Energy v. Pardue*, 310 Ga. App. 355, 358(2) (713 SE2d 456) (2011).

> [T]hose who attain public figure status have assumed roles of special prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to

> influence the resolution of the issues involved. In either event, they invite attention and comment.

Id. (punctuation omitted).

"Whether a person is a public figure is a question of law that requires the court to review the nature and extent of the individual's participation in the specific controversy that gave rise to the defamation." *Mathis v. Cannon*, 276 Ga. 16, 22(3) (573 SE2d 376) (2002). "[A] court must isolate the public controversy, examine the plaintiff's involvement in the controversy, and determine whether the alleged defamation was germane to the plaintiff's participation in the controversy." Id. at 23(3) (punctuation omitted).

On appeal, Accuracy in Media maintains that the public controversy is "the highly charged debate over campus anti-Israel protests." Accuracy in Media argues that Izzy "thrust herself into that public issue by participating in the solidarity camp at Columbia," and that Izzy's parents "likewise stepped into the fray by giving a public press statement defending [Izzy's] conduct." Accuracy in Media argues that, as a result, the trial court should have treated the Giustis as limited purpose public

figures, which in turn required them to establish actual malice on the part of Accuracy in Media.[2]

However, even if we assume that Accuracy in Media has correctly identified the public controversy and that their statements were germane to that controversy, we conclude that the record does not show that the Giustis' level of involvement in the controversy was sufficient to make them public figures for purposes of their defamation claims. The record shows that Izzy participated in a protest on Columbia University's main quad and was arrested as part of a mass arrest on April 18, 2024. Izzy was not a leader of the protest and did not seek a position as a leader or spokesperson of the protests. Izzy was not at the protest on April 21, 2024, when the photograph of the person holding the sign was taken. There is nothing in the record indicating that Izzy gave interviews or statements to the media. Furthermore, although Accuracy in Media contends that Izzy's parents issued a joint statement to the *Savannah Morning News*, that statement is not included in the appellate record. Based on this record, we conclude that the Giustis did not thrust themselves to the forefront of the controversy and were therefore not public figures for purposes of their

---

[2] Accuracy in Media does not argue on appeal that the Giustis failed to make a prima facie showing of negligence on Accuracy in Media's part.

defamation claims.[3] See *Infinite Energy*, 310 Ga. App. at 360-61(2) (plaintiff that did not "thrust itself to the forefront of the controversy" was not a limited purpose public figure); compare *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 818-19(3)(b) (555 SE2d 175) (2001) (plaintiff who granted ten interviews and one photo shoot in a three-day period was a limited purpose public figure).

(b) Accuracy in Media contends that the Giustis' defamation claims lack a probability of success because they target speech that is either factually true in substance or constitutionally protected as opinion and commentary. Again, we disagree.

Accuracy in Media argues that the core of its publications was true — that Izzy was arrested at an extremist anti-Israel encampment at Columbia University, an event that Accuracy in Media believed to be antisemitic. Accuracy in Media further argues that labeling someone an "antisemite" is an example of rhetorical hyperbole or opinion. However, the Giustis' defamation claims originate from the misidentification of Izzy as the person holding the sign at the April 21 protest. Specifically, the Giustis

---

[3] Because we conclude that the Giustis were not public figures for purposes of their defamation claims, we need not address Accuracy in Media's argument that the trial court erred in finding that the Giustis were likely to prevail on their defamation claims under the actual malice standard.

11

alleged that Accuracy in Media defamed Izzy by causing "a website to be published that falsely accused Plaintiff of being the person holding the offensive sign, and [Accuracy in Media] caused a mobile billboard truck to be driven through Savannah bearing similar messages." The Giustis also alleged that Accuracy in Media defamed Joni Saxon-Giusti and Peter Giusti by publishing statements falsely "indicating that their parenting had caused Izzy to be the person holding the offensive sign and otherwise caused her to be a 'raging antisemite,' when in fact the underlying assumption for that statement was wholly inaccurate." At this stage of the proceeding, we must accept the Giustis' evidence as true. See *Wilkes & McHugh*, 306 Ga. at 262(2)(b). Furthermore, "there is no wholesale defamation exception for anything that might be labeled opinion. An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or to *imply* defamatory facts about the plaintiff that are capable of being proved false." *Peabody Energy Corp. v. Strata Prods. Worldwide*, 375 Ga. App. 856, 861(4) (917 SE2d 858) (2025). Here, at least some of the statements that the Giustis allege were published by Accuracy in Media may be reasonably understood to state or imply defamatory facts about the Giustis that could

12

be proven false. Accordingly, the trial court did not err by denying Accuracy in Media's anti-SLAPP motion to strike the defamation claims. See id. (affirming denial of anti-SLAPP motion to strike were statements at issue could reasonably be interpreted as implying a defamatory fact and are capable of being proven false); see also *Boley v. A-1 Horton's Moving Serv.*, 373 Ga. App. 574, 579(2) (907 SE2d 372) (2024) (affirming denial of anti-SLAPP motion to strike defamation claim where statements made by the defendant, if proven to be untrue, could amount to defamation).

2. Accuracy in Media also argues that the trial court erred by ruling that the Giustis are likely to prevail on their claims of intentional infliction of emotional distress.

> It is well settled that to recover on a claim of intentional infliction of emotional distress, a plaintiff must show evidence that: (1) defendants' conduct was intentional or reckless; (2) defendants' conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The distress must be reasonable and justified under the circumstances, and

there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress.

*Ghodrati v. Stearnes*, 314 Ga. App. 321, 323 (723 SE2d 721) (2012) (citation modified).

In its order denying Accuracy in Media's anti-SLAPP motion to strike, the trial court found that the Giustis had adequately pleaded outrageous conduct, that Accuracy in Media was purposeful in targeting the Giustis, and that the Giustis had secured enough evidence to create a jury question about whether Accuracy in Media "honestly" believed the speech they published about Izzy. However, the trial court's order did not address whether the Giustis' intentional infliction of emotional distress claim was supported by a sufficient prima facie showing of facts regarding a causal connection between Accuracy in Media's conduct and any emotional distress or the severity of any emotional harm.

"[W]e are a court of review, not of first view." *McQueen v. Long*, 372 Ga. App. 840, 844 (906 SE2d 909) (2024) (punctuation omitted). Accordingly we vacate the trial court's order to the extent it denied Accuracy in Media's motion as to the Giustis' intentional infliction of emotional distress claim and remand for the trial court to address whether the Giustis' intentional infliction of emotional distress claim was

14

supported by a sufficient prima facie showing of facts regarding a causal connection between Accuracy in Media's conduct and any emotional distress and the severity of any emotional harm. See id.

3. Accuracy in Media contends that the trial court erred by concluding that the Giustis likely will prevail on their claims of false light invasion of privacy, right of publicity, and injunctive relief for false advertising. The trial court stated in its order that "[t]he parties acknowledged at oral argument that Plaintiffs' claims will rise and fall with the defamation claim." Accuracy in Media argues that although other defamation-based torts may *fail* when they do not overcome First Amendment safeguards, they do not *proceed* simply because one has stated a claim or established a probability of prevailing on a defamation claim.

> To establish a claim of false light invasion of privacy, a plaintiff must show the existence of false publicity that depicts the plaintiff as something or someone which he is not. Next, the plaintiff must demonstrate that the false light in which he was placed would be highly offensive to a reasonable person.

*Williams v. Cobb County Farm Bureau*, 312 Ga. App. 350, 353(2)(b) (718 SE2d 540) (2011) (punctuation omitted).

In Georgia, a right of publicity claim, also referred to an appropriation of likeness claim, "consists of the following elements: [1] the appropriation of another's name and likeness, whether such likeness be a photograph or other reproduction of the person's likeness, [2] without consent, and [3] for the financial gain of the appropriator." *Bullard v. MRA Holding*, 292 Ga. 748, 752(2) (740 SE2d 622) (2013) (punctuation omitted).

The Giustis' claim for injunctive relief for false advertising is based on OCGA §§ 10-1-421(a) and 10-1-423. OCGA § 10-1-421(a) provides as follows:

> No person, firm, corporation, or association or any employee thereof, with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or to do anything of any nature whatsoever to induce the public to enter into any obligation relating thereto, shall make or disseminate or cause to be made or disseminated before the public in this state, in any newspaper or other publication, radio, television, or advertising device or by public outcry or proclamation or any other manner or means whatever, any statement concerning such real or personal property or services, professional or otherwise, or concerning any circumstances or matter of fact connected with the proposed performance or disposition thereof which is untrue or fraudulent and which is known or which by the exercise of reasonable care should be known to be untrue or fraudulent.

16

OCGA § 10-1-423, in turn, provides that "[a]ny person, firm, or corporation offering through advertising merchandise, commodities, or services for sale in violation of Code Section ... 10-1-421 ... may be enjoined from such advertising by the superior court having jurisdiction, upon the suit of any person aggrieved or about to be aggrieved thereby."

The trial court found that the Giustis "adequately pleaded the presence of a financial motive and financial profit in their [v]erified [c]omplaint." However, the trial court did not make findings regarding any of the other elements of the claims of false light invasion of privacy, right of publicity, or injunctive relief for false advertising. Consequently, we vacate the trial court's order to the extent it denied Accuracy in Media's motion as to the Giustis' claims for false light, right of publicity, and injunctive relief and remand for the trial court to address the probability of success of these claims in the first instance. See *McQueen*, 372 Ga. App. at 844.

4. Finally, Accuracy in Media contends that the trial court erred in concluding that Izzy is likely to prevail on her claim of cybersquatting. We agree.

The Giustis' cybersquatting claim is apparently based on the Anti-Cybersquatting Consumer Protection Act, 15 USC § 1125(d)(1)(A) ("ACPA").

17

"Congress passed the [ACPA] in 1999 in order to combat cybersquatting, or 'the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks.'" *Boigris v. EWC P&T*, 7 F4th 1079, 1084(II) (11th Cir. 2021).

15 USC § 1125(d)(1)(A) provides as follows:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person--
(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
(ii) registers, traffics in, or uses a domain name that--
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

"While the ACPA can apply to personal names, [15 USC] § 1125(d)(1)(A) clarifies that a cause of action is available only when the infringing domain includes 'a personal name which is protected as a mark under this section[.]'" *Shift4 Payments*

*v. JaredIsaacmanCourtCase.com*, 2025 WL 2606990 at *4(IV) (N.D. Cal. 2025). For purposes of the ACPA, "a personal name is a descriptive term." Id. "A descriptive mark receives trademark protection only when it establishes 'secondary meaning' in the marketplace." Id. (punctuation omitted). "Secondary meaning only occurs when in the minds of the public, the primary significance of the name is to identify the source of the product rather than the product itself." Id.

Here, Accuracy in Media used Izzy's personal name in the domain name of the website izzygiusti.com. The trial court found that the Giustis had pleaded facts that show Accuracy in Media was commercially exploiting Izzy's identity through the website it created. With regard to whether Izzy's name is protected as a mark for purposes of the ACPA, the trial court's order states that Accuracy in Media

> argue[s] that Izzy has not developed a significant secondary meaning in her name. Yet they simultaneously claim that she is a public figure in an attempt to impose the actual malice standard. These positions are clearly contradictory; if Izzy became a public figure in the course of the protests, she likely acquired secondary meaning in her name.

However, nothing in the record indicates that Izzy's name was associated in any way with any product or service. Consequently, the trial court erred in concluding that she

19

likely acquired secondary meaning in her name for purposes of the ACPA if she became a public figure in the course of the protests. See *Shift4 Payments*, 2025 WL 2606990 at *4(IV) (plaintiff did not possess a mark covered under the ACPA because his personal name referred only to the plaintiff himself rather than the company he founded and the services it provides). We therefore reverse the trial court's denial of Accuracy in Media's anti-SLAPP motion to strike with respect to the Giustis' cybersquatting claim.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded. Brown, C. J., and Mercier, J., concur.*