**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 15, 2013**

# In the Court of Appeals of Georgia

A13A1528. INKAHOLIKS LUXURY TATTOOS GEORGIA, LLC
      et al. v. PARTON et al.

ANDREWS, Presiding Judge.

James Parton and Inkaholics, LLC (Parton's tattoo studio) sued Inkaholiks Luxury Tattoos Georgia, LLC and its owner, Uchechukwu Nwaneri, alleging trade name infringement. The suit alleged that the plaintiffs had protected rights in the name Inkaholics for their tattoo business, which operated in the metro Atlanta area, and that the defendants subsequently infringed on the name and damaged the plaintiffs' business by using a confusingly similar name, Inkaholiks, to establish a competing tattoo business in the same area. The plaintiffs sought to permanently enjoin the defendants from using the name Inkaholiks, and the award of damages, under three counts based on the Uniform Deceptive Trade Practices Act (UDTPA)

(OCGA § 10-1-370 et seq.); the Fair Business Practices Act (FBPA) (OCGA § 10-1-390); and the trademark infringement law at OCGA § 10-1-440 et seq.

The defendants appeal from the trial court's pre-trial order granting the plaintiffs an interlocutory injunction which, pending final resolution of the case, enjoined the defendants from using the name Inkaholiks. We find under the circumstances of this case that the trial court did not abuse its discretion and affirm to the extent the court granted the interlocutory injunction for the metro Atlanta area in which evidence showed the plaintiffs operated their business. To the extent the court granted the interlocutory injunction beyond the metro Atlanta area in which the plaintiffs business operates, we find no basis for the injunction and reverse.

1. Trademarks and trade names are protected from infringement in Georgia by statute and common law. *Eckles v. Atlanta Technology Group, Inc.*, 267 Ga. 801 (485 SE2d 22) (1997); *Giant Mart Corp. v. Giant Discount Foods, Inc.*, 247 Ga. 775 (279 SE2d 683) (1981). In count 1 of the complaint, the plaintiffs allege infringement under the UDTPA. The UDTPA provides for injunctive relief to prevent damage caused by a deceptive trade practice, including the use of a confusingly similar trade name which infringes on a protected trade name. *Future Professionals, Inc. v. Darby*, 266 Ga. 690 (470 SE2d 644) (1996). Relief may be obtained from the deceptive

practice, whether or not the protected trade name was registered, and without proof that the alleged infringer intended to deceive the public by causing confusion. Id.; *Eckles*, 267 Ga. at 802. In count 2 of the complaint, the plaintiffs allege infringement under the FBPA. The FBPA protects businesses from unfair or deceptive practices in the conduct of trade or commerce, including passing off goods or services as those of another, or causing actual confusion as to the source, sponsorship, approval, or certification of goods or services, and provides for damages and injunctive relief. OCGA §§ 10-1-393 (b) (1), (2); 10-1-399 (a). Thus, the FBPA broadly protects against infringement on a protected trade name by use of a confusingly similar name. See *Isbell v. Credit Nation Lending Service, LLC*, 319 Ga. App. 19, 30 (735 SE2d 46) (2012). Finally, in count 3 of the complaint, the plaintiffs allege infringement under OCGA § 10-1-440 et seq. Trademarks[1] and trade names registered with the Georgia Secretary of State are protected under OCGA § 10-1-440 et seq. from infringement by use of confusingly similar names, and actions may be brought seeking the award of damages and injunctive relief. *Diedrich v. Miller & Meier &c., Inc.*, 254 Ga. 734,

---

[1] A "[t]rademark means any word, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others." OCGA § 10-1-440 (5).

736 (334 SE2d 308) (1985); *Giant Mart*, 247 Ga. at 775-777; OCGA §§ 10-1-450; 10-1-451.

To obtain the relief sought on the trade name infringement claim, the initial issue under all three counts asserted by the plaintiffs is whether they had a protected right in the name Inkaholics. *Future Professionals*, 266 Ga. 690; *Eckles*, 267 Ga. 801; *Giant Mart*, 247 Ga. 775. To prove a protected right in the name, the plaintiffs would be required to show: (1) that the name was so original or inherently distinctive that they had the prior exclusive right to use it, or (2) if the name was not original or inherently distinctive, it was a descriptive name in which they were the first to achieve "secondary meaning" in the metro Atlanta area in which the plaintiffs' business operates. Id. at 776. "A trademark or trade name composed of generic or descriptive words is incapable of exclusive appropriation," unless it has acquired additional "secondary meaning." *Alexie, Inc. v. Old South Bottle Shop Corp.*, 179 Ga. App. 190, 191 (345 SE2d 875) (1986). When a business entity's use of merely descriptive words as a trade name "causes the public to understand that the goods or services of that business entity are designated thereby, then those words do acquire a secondary meaning which is protected under the law." *Eckles*, 267 Ga. at 802; *Giant Mart Corp.*, 247 Ga. at 776.

4

After a hearing on the plaintiffs' motion for injunctive relief, the trial court granted an interlocutory injunction finding that the plaintiffs presented evidence showing:[2] (1) that the plaintiffs had a legally protected right in the descriptive name Inkaholics (which was registered in Georgia) by evidence tending to show that they were the first to achieve secondary meaning in the name Inkaholics in the metro Atlanta area – and did so before the defendants commenced use of the name Inkaholiks in that area;[3] and (2) that the defendants' subsequent use of the similar name Inkaholiks in the same area infringed on the plaintiffs' trade name by causing

[2] Findings of fact made in the trial court's order granting an interlocutory injunction "are not final and are not conclusive between the parties on the final trial." *Miami Valley Fruit Farm, Inc. v. Southern Orchard Supply Co.*, 214 Ga. App. 624, 626 (448 SE2d 482) (1994).

[3] In determining priority of ownership of a trade name which requires secondary meaning for protection, the majority rule is not who used the trademark or trade name first chronologically; rather, "the senior user must prove the existence of secondary meaning in its mark at the time and place that the junior user first began use of that mark . . . If the senior user cannot prove that its mark possessed secondary meaning at the time defendant commenced its use [or commenced use of a mark alleged to be confusingly similar], there can be no infringement, for if there was no secondary meaning, there was no likelihood of confusion when the junior user arrived on the scene." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 16:34 (4th ed.). Moreover, where the mark requires secondary meaning for protection, the senior user's rights in the mark are restricted to the trade area where the mark achieved secondary meaning. Id. at § 26:25.

5

the tattoo-buying public in the area to confuse the defendants' services for the plaintiffs' services.

In support of their petition for injunctive relief, the plaintiffs presented sworn evidence showing the following: The plaintiffs have continuously used the trade name Inkaholics in the metro Atlanta area since August 2008 when they incorporated Inkaholics, LLC, started their tattoo business under that name, and later registered the name in Georgia. Beginning in 2008 and 2009, the plaintiffs advertised Inkaholics as their tattoo business in the metro Atlanta area on radio and television and through community fund raisers. The plaintiffs provided evidence that, pursuant to these efforts and the continuous operation of the plaintiffs' tattoo business since 2008, members of the tattoo-buying public in the metro Atlanta area, and a well-known tattoo business competitor in the area, have since 2008 come to associate the name Inkaholics with the tattoo services provided by the plaintiffs. The plaintiffs further showed that the defendants first used the trade name Inkaholiks in the metro Atlanta area starting in November 2011 when they incorporated their tattoo business in the name Inkaholiks Luxury Tattoos Georgia, LLC. The defendants subsequently advertised their tattoo business in the metro Atlanta area by radio and other methods using the abbreviated name Inkaholiks – a name similar in appearance and

6

phonetically indistinguishable from the plaintiffs' name Inkaholics. The plaintiffs also produced evidence showing that, because the defendants' name Inkaholiks is similar looking and sounding to the plaintiffs' name Inkaholics, members of the tattoo-buying public have confused the defendants' services for the plaintiffs' services. The defendants filed sworn evidence, also considered by the trial court, showing that members of the tattoo-buying public in the metro Atlanta area associate the name Inkaholiks with the tattoo services provided by the defendants.

"[T]he grant or denial of an interlocutory injunction rests in the sound discretion of the trial judge according to the circumstances of each case." *Zant v. Dick*, 249 Ga. 799 (294 SE2d 508) (1982). "The purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case." *Grossi Consulting, LLC v. Sterling Currency Group, LLC*, 290 Ga. 386, 388 (722 SE2d 44) (2012). Based on the evidence presented by the plaintiffs showing they had achieved secondary meaning in the name Inkaholics in the metro Atlanta area before the defendants commenced using the similar name Inkaholiks in that area (and evidence of resulting confusion), we cannot find it was an abuse of the trial court's discretion to grant an interlocutory injunction protecting the plaintiffs' trade name, pending final adjudication, to the

7

extent the interlocutory injunction was limited to the metro Atlanta area. *Multiple Listing Service, Inc. v. Metropolitan Multi-List, Inc.*, 223 Ga. 837, 841-843 (159 SE2d 52) (1968); *Bijou Salon & Spa, LLC v. Kensington Enterprises, Inc.*, 283 Ga. App. 857, 860 (643 SE2d 531) (2007) (although not controlling, trial court may consider merits of the case in balancing the equities in favor of temporary injunctive relief). The evidence showed that metro Atlanta was the trade area in which the plaintiffs achieved secondary meaning in the name Inkaholics and the right to protection of the name in that area. Accordingly, to the extent the injunction protecting the plaintiffs' trade name extended beyond the metro Atlanta area, the trial court abused its discretion and we reverse. We find no merit in the defendants' contention that the trial court failed to properly balance the equities in granting the injunctive relief.

2. The defendants contend that the trial court erred by finding that their Answers and Defenses were not verified, and therefore the court erroneously failed to consider statements of fact set forth in their Answer and Defenses. The record shows that the defendants' Answer and Defenses, filed unverified on October, 26, 2012, was later verified by sworn verifications dated December 14, 2012, filed a couple of weeks before the court's February 21, 2013 order granting the interlocutory injunction. Even if the court should have considered the later verified Answers and

8

Defenses, that pleading admits that the defendants first used the trade name Inkaholiks in the metro Atlanta area in 2011, and contains no other statement of fact which would have required denial of the motion for an interlocutory injunction. Any error was harmless. On January 28, 2013, the defendants filed their unverified Amended Answer and Counterclaims, which incorporated and re-alleged the original Answer and Defenses and amended by setting forth Counterclaims. Contrary to the defendants' contention, the record shows that the Counterclaims filed on January 28, 2013, were not verified.

3. There is no merit to the defendants' claim that the trial court erred because the interlocutory injunction enjoining the defendants from using the name Inkaholiks fails to maintain the status quo by allowing the defendants to continue their existing use of that name. In a trademark infringement case, the status quo to be preserved by an interlocutory injunction "is not the situation of contested rights, but the last, peaceable, noncontested status of the parties . . . [In other words,] the situation prior to the time the junior user began use of its contested mark." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:50 (4th ed.).

4. Citing only to allegations in their unverified counterclaims,[4] the defendants contend that, even if the plaintiffs can prove that they achieved secondary meaning in the name Inkaholics in the metro Atlanta area prior to the time that the defendants commenced use of the trade name Inkaholiks in that area, the plaintiffs are still not entitled to an interlocutory injunction because: (1) the defendants own common law trademark rights in the name Inkaholics, which have been continuously in use in interstate commerce outside Georgia since 1997; and (2) the defendants own federally registered marks in the name of "Inkaholics.com," registered on November 8, 2011, and "Inkaholiks," registered on January 29, 2013. Based on these allegations, the defendants contend that they have superior rights to use of those marks under the Federal Trademark Act (15 USC § 1051 et seq., also known as the Lanham Act.).

In the absence of a verified counterclaim or any sworn facts in the record to establish a factual basis for this argument, we find no error in the trial court's refusal to deny interlocutory injunctive relief on this basis. But even assuming that these facts could be established, there is no evidence that, when the plaintiffs first used the name Inkaholics in the metro Atlanta area in 2008, they had actual knowledge of the

---

[4] We render no opinion on whether the defendants have properly asserted their counterclaims in this case. See OCGA § 9-11-13; *Baitcher v. Louis R. Clerico Assoc.*, 132 Ga. App. 219, 221 (207 SE2d 698) (1974).

defendants' prior use of the name Inkaholiks outside of Georgia. In that case, the plaintiffs would be entitled to a "limited area" defense under 15 USC § 1115 (b) which would: (1) allow the plaintiffs to use the name Inkaholics in the metro Atlanta area if evidence showed they continuously used the name and achieved secondary meaning prior to the defendants' federal registration, and (2) enjoin the defendants from infringing on the plaintiffs' mark in that area. *Burger King of Fla., Inc. v. Hoots*, 403 F2d 904 (7th Cir. 1968); McCarthy, supra at § 26:43 to 26:45. Even considering the allegations in the defendants' counterclaims, the trial court did not err in granting the interlocutory injunction to the plaintiffs for the metro Atlanta area.

*Judgment affirmed in part and reversed in part. Dillard and McMillian, JJ., concur*.