[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-12340
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cv-00226-WTM-GRS

DAISY BYRD MOBLEY,

Plaintiff-Appellant,

versus

CLAIRE FERMONT-LANGLAIS,
MARC JACOBS INTERNATIONAL,
COTY, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(July 18, 2017)

Before ED CARNES, Chief Judge, MARCUS, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Daisy Byrd Mobley claims that Claire Fermont-Langlais, Marc Jacobs International, and Coty, Inc. wrongfully appropriated materials from her autobiography, wardrobe, and personal history in violation of federal and state law.[1]  She appeals pro se from the district court's dismissal of her complaint and denial of her motion to amend that complaint.

## I.

In 2006, Fermont-Langlais visited the Savannah, Georgia, jewelry store where Mobley worked.[2]  Mobley's autobiography, Southern Girl, was on display there.  Fermont-Langlais and Mobley discussed the book's purpose and Mobley's hopes and dreams.  During that conversation, Fermont-Langlais learned that Mobley's first name was Daisy and her sister's name was Lola.

Mobley alleges that Fermont-Langlais then went to Coty, Inc. — a global beauty company whose licensed fragrance brands include Calvin Klein and Marc Jacobs — and recommended it begin selling five perfumes called "Daisy," "Lola," "Daisy Dream," "Daisy Dream Forever," and "Oh, Lola" under the Marc Jacobs brand name.  Mobley claims that those perfumes, and several others, were named

---

[1] Mobley insists that she sued Marc Jacobs, the person, not Marc Jacobs International, the corporation.  The defendants, on the other hand, assert that the corporation is the proper defendant.  We need not resolve this issue because the district court did not err in dismissing her complaint regardless of which Marc Jacobs is the proper defendant in this action.

[2] At this stage of the litigation, we must accept the allegations in Mobley's complaint as true and draw all reasonable inferences in her favor.  See Chaparro v. Carnival Corp., 693 F.3d 1333, 1335 (11th Cir. 2012).  We relate the facts accordingly, expressing no opinion as to what the evidence adduced at trial would show.

after her and her sister, that the defendants referred to the Daisy and Lola perfume lines as "sisters" or a family of perfumes, and that she inspired the collections. She also asserts that portions of the perfumes' packaging were based on the artwork from her book cover because the packaging mimics the cover's colors and involves a rose. And she alleges that some of the packaging on some of the perfumes was modeled after her skin color and the outfit she wore on the day she met Fermont-Langlais.

## II.

We first consider whether the district court erred by dismissing Mobley's complaint. Although it is not immediately clear what claims Mobley does and does not assert in her complaint, we (like the district court) construe her complaint liberally and will consider whether she sufficiently pleaded a claim of copyright infringement, appropriation, trademark infringement, or fraud.[3] See Stephens v.

---

[3] To the extent Mobley intended to bring them, we do not consider her conversion, plagiarism, Fifth Amendment, or intentional infliction of emotional distress (IIED) claims. To begin with, she has abandoned any conversion claim that she may have alleged because she mentioned it only in passing in her initial brief. Sapuppo v. Allsatate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). The fact that she mentions her conversion claim several additional times in her reply brief does not make up for that deficiency. United States v. Evans, 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (quotation marks omitted). We do not consider her plagiarism claim because Mobley never mentioned it in the district court and referred to it only in passing in her initial brief to this Court. Juris v. Inamed Corp., 685 F.3d 1294, 1325 (11th Cir. 2012) ("If a party hopes to preserve a claim, argument, theory, or defense on appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); Sapuppo, 739 F.3d at 681. And we do not consider the

3

DeGiovanni, 852 F.3d 1298, 1318 n.16 (11th Cir. 2017) ("A document filed pro se is to be liberally construed . . . .") (quoting Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007)).

"We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." Chaparro, 693 F.3d at 1335. "To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face." Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

## A.

Although Mobley repeatedly disavows any intent to bring a copyright infringement claim, the district court considered whether she stated one. We reject Mobley's contention that the district court erred by doing so.

In determining whether Mobley stated a claim for copyright infringement,

Fifth Amendment or IIED claims Mobley raised in the district court because she makes either no mention or only passing mention of them in her briefs to this Court. Id.

4

the district court was simply liberally construing Mobley's pro se complaint, other pleadings, and briefing — as we have frequently directed district courts to do.  See, e.g., Stephens, 852 F.3d at 1318 n.16 (quoting Erickson, 551 U.S. at 94, 127 S. Ct. at 2200).  Though Mobley repeatedly protests that she never intended to bring a copyright infringement claim, she was not injured by the district court's decision to consider it as a potential ground for relief in addition to the claims Mobley focused on.[4]  And the district court's decision to do so is made all the more reasonable by Mobley's repeated assertions in her district court filings that copyright protection attaches even where a work is not formally registered with the United States Copyright Office.

The district court was also correct to conclude that Mobley failed to state a copyright infringement claim.  Rights under the Copyright Act attach at the time an author creates a work "susceptible to copyright," regardless of whether she registers her copyright.  See Donald Frederick Evans & Assocs. v. Cont'l Homes, Inc., 785 F.2d 897, 903 (11th Cir. 1986).  But the author must register her work before she can sue someone for infringing on those rights.  Id.  Mobley has repeatedly acknowledged that she has not registered a copyright with the Copyright Office.  As a result, she failed to state a copyright infringement claim.  See id.

---

[4] The district court's willingness to consider claims Mobley disavowed, as well as its willingness to consider the plethora of claims she asserted in various filings, disproves Mobley's claim that the district court was "insensitive" to the fact that she was representing herself.

B.

Mobley's appropriation claim also fails.  To state a claim for appropriation under Georgia law, a plaintiff must allege (1) non-consensual (2) appropriation of her name or likeness (3) for the financial gain of the appropriator.  Bullard v. MRA Holding, LLC, 740 S.E.2d 622, 626 (Ga. 2013).  Mobley is not required to show that her name had any "preexisting commercial value" to state an appropriation claim.  Id. at 626.  But she must do more than allege that the perfumes at issue have the same names as she and her sister do:  she must allege facts showing that the public would associate those names with her and her sister, see Restatement (Second) of Torts § 652C cmt. c ("It is not enough that the defendant has adopted for himself a name that is the same as that of the plaintiff, so long as he does not pass himself off as the plaintiff or otherwise seek to obtain for himself the values or benefits of the plaintiff's name or identity.").[5]

Mobley has not done so here.  To begin with, Mobley has no standing to assert her sister's right to prevent the name "Lola" from being appropriated.  See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 474, 102 S. Ct. 752, 760 (1982) ("[In order to have standing, a]

---

[5] Georgia courts have looked to the Restatement (Second) of Torts for guidance in deciding privacy claims, like misappropriation, in the past.  Bullard, 740 S.E.2d at 751–52 (explaining that appropriation is one of "four disparate torts under [the] common name of [invasion of privacy]") (alterations in original); Smith v. Stewart, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008) (citing the Restatement as authority for what a plaintiff must show to sustain a different invasion of privacy claim).

6

plaintiff generally must assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties.").

As for Mobley's own first name, the name "Daisy" is not so unique, nor Mobley and her sister so well known, that the public would automatically associate the perfumes with them. And even if the perfumes' packaging bears some resemblance to Mobley's book cover (or skin color or outfit), she did not allege that she had sold or distributed her book (or was known for that outfit or skin color) widely enough that the perfumes' packaging — when combined with the name "Daisy" — would cause the public to associate her with the perfumes.

It is true that Mobley now claims that she has "sold a great number of books" and informed the district court that, as of March 2016, she had sold "hundreds of books to date." (Quotation marks omitted.) But there is no reason to suspect that the general public, even in the Savannah area, would draw a connection between her identity and the defendants' perfumes based solely on the name "Daisy" and the colors the perfume packaging shared with Mobley's book or the outfit she wore on the day she met Fermont-Langlais.[6]

## C.

Next, we consider whether Mobley has stated a claim for trademark

---

[6] To the extent that Mobley seeks to press a misappropriation claim based solely on the defendants' alleged use of the artwork from her book cover, such a claim would also fail. As Bullard makes clear, a misappropriation claim is based on the appropriation of one's "name or likeness," not one's artwork. See 740 S.E.2d at 626.

7

infringement under Georgia or federal law.  To state a trademark infringement claim, both Georgia trademark law and the Lanham Act require that Mobley allege facts showing that the names "Lola" and "Daisy," the cover art from her book, or Mobley's outfit and skin color were sufficiently associated with her or her sister in the public mind that consumers were likely to be misled into associating them with the perfumes.  See Crystal Entm't & Filmworks, Inc. v. Jurado, 643 F.3d 1313, 1320 (11th Cir. 2011); Ga. Code § 10-1-440(1);[7] accord Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) ("[T]he touchstone in a trademark infringement action is not simply whether there is unauthorized use of a protected mark but whether such use is likely to cause consumer confusion.").  As we have already discussed when addressing Mobley's misappropriation claim, she has not alleged sufficient facts to show such an association.  While we addressed only Mobley's own first name ("Daisy") in that section, the same reasoning applies to her sister's name ("Lola").  There is no reason to suspect that the public would draw a connection between her sister and the defendants' perfumes based solely on the name "Lola" and the colors the perfume's packaging shared with Mobley's book.

D.

---

[7] Although "[t]rademarks and trade names are protected from infringement in Georgia by statute and common law," Inkaholiks Luxury Tattoos Ga., LLC. v. Parton, 751 S.E.2d 561, 563 (Ga. Ct. App. 2013), we have not found any Georgia cases recognizing a distinction between the two on this point.

8

Finally, Mobley argues that she stated a claim for fraud.  "To sustain a fraud claim under Georgia law, the plaintiff must show (1) a false representation made by the defendants; (2) scienter, or knowledge of the statement's falsity at the time it was made; (3) an intention to induce the plaintiff to act or refrain from acting in reliance on the statement; (4) the plaintiff's justifiable reliance; and (5) damage to the plaintiff."  Adkins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1325 (11th Cir. 2005).  Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to "state with particularity the circumstances constituting fraud."  "We have held that pursuant to Rule 9(b), a plaintiff [asserting a claim of fraud] must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010).  In this case, Mobley has failed to allege facts showing that Fermont-Langlais gained from her purported misrepresentations.

Mobley alleges that Fermont-Langlais pretended to befriend her; asked lots of questions about Southern Girl; led Mobley to believe that Fermont-Langlais was writing a book, too; and asked whether Mobley changed the names in her book to protect the innocent.  According to Mobley, those were all misrepresentations and, as a result of them, Mobley told Fermont-Langlais her name, her sister's name, and

9

about her hopes and dreams.  Mobley claims Fermont-Langlais then used that information to design the perfume lines at issue here.

But Mobley's allegations do not show that Fermont-Langlais gained anything from that conversation.  Fermont-Langlais did not need to speak with Mobley at all to see what Mobley was wearing, that she was African American, and to observe the colors and artwork on the cover of Southern Girl — all of which are key elements of what Mobley claims Fermont-Langlais appropriated from her. And Fermont-Langlais bought a copy of Southern Girl, which had Mobley's name on the cover and discussed Mobley's experience growing up and living in poverty, her dreams for the future, and the fact that she had a sister.[8]  So Fermont-Langlais would have learned about Mobley's struggles with poverty, family, and dreams for the future even if she hadn't spoken with Mobley about them.  Mobley does not allege that she would not have sold Fermont-Langlais the book but for her misrepresentations.  And, as Mobley has allegedly "sold a great number of books," it seems unlikely that Fermont-Langlais had to befriend Mobley in order to buy the book.

That Fermont-Langlais may have learned that Mobley's sister's name was "Lola" is not sufficient.  Lola is not an uncommon name.  Learning someone's

---

[8] It is possible that the dreams Mobley discussed with Fermont-Langlais at the store differed from those she discussed in the pages of Southern Girl, but if so Mobley has not made that clear.  And, in any event, we are not persuaded that it would have made any difference.

name in a circumstance like this, where there is no indication that people would connect that name to particular person, is simply not a gain that gives rise to a fraud claim. Here, the contextual information that might connect the name Lola to Mobley and her sister was information that Fermont-Langlais could or would have obtained even without the alleged misrepresentations. And even with that context, it seems unlikely that many consumers would connect those names to Mobley and her sister.

### III.

We also reject Mobley's contention that the district court should have allowed her to amend her complaint. "[A] district court may properly deny leave to amend . . . under Rule 15(a) when such an amendment would be futile." See Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262–63 (11th Cir. 2004). Amendment "is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment." See Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

In her proposed amended complaint, Mobley sought to add a state law right of publicity claim. But under Georgia law a "right of publicity claim" is simply another name for a misappropriation claim. Shiho Seki v. Groupon, Inc., 775 S.E.2d 776, 780 (Ga. Ct. App. 2015) ("Sometimes referred to as a right to publicity, misappropriation of someone's name or likeness constitutes one of four

11

recognized forms of invasion of privacy . . . ."). Our conclusion that she failed to state a claim of misappropriation means that a right to publicity claim also would have been dismissed under Rule 12(b)(6). And the facts alleged in her amended complaint had no impact on the legal sufficiency of her earlier claims. As a result, her proposed amendment was futile.

## IV.

Finally, Mobley protests that the district court violated her due process rights by failing to hold a trial in this case. She asserts that she could show her claims were plausible if she could present them to a jury. But plausibility must be shown at the pleading stage, not just at trial. See generally Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007). Because Mobley failed to make that showing, the district court did not err in dismissing her complaint without a trial under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [9]

**AFFIRMED IN PART; DISMISSED IN PART.**

---

[9] Mobley also contends that (1) the district court was biased in favor of the wealthy defendants, (2) defense counsel acted unethically, and (3) the district court erred by refusing to allow her to proceed on appeal in forma pauperis (IFP). The record does not support Mobley's claim of bias on the part of the district court. If Mobley believes that defense counsel engaged in sanctionable misconduct, she should have presented that claim to the district court so that it could have resolved it in the first instance. And, because a district court's order denying leave to appeal IFP is not a final appealable order, we lack jurisdiction to review it. See Gomez v. United States, 245 F.2d 346, 347 (5th Cir. 1957); 28 U.S.C. § 1291. Though Mobley could have challenged the district court's denial of leave to proceed IFP by filing a motion in this Court, she has not done so. Fed. R. App. P. 24 advisory comm. n.(a). Instead, she simply paid this Court's filing fee. As a result, we reject her bias and unethical conduct contentions and **DISMISS** her appeal as to the denial of leave to proceed IFP.